## 3732. McNAMARA *v.* GEORGIA COTTON CO.

1. It is not necessary that an agent should have written authority to execute in behalf of his principal a contract required by the statute of frauds to be in writing, but such authority may be conferred by parol.
2. Where an executory contract for the sale and delivery of personal property at a specified time is entered into, and the seller fails to deliver the property at the time and place agreed on, demand for delivery is not a necessary condition precedent to the bringing of an action for damages by the purchaser for the breach of the contract.
3. Testimony of a witness having personal knowledge as to the market value of a commodity at a given time and place is evidence of a substantive fact, and, if undisputed, will demand a finding that the commodity was of the value fixed by the witness. In such a case the jury can not arbitrarily disregard such testimony and substitute their own opinion as to the market value of the commodity.
4. In the trial of an action for damages for the breach of a contract such as that referred to in the preceding headnote, memoranda sent by the plaintiff to its agent who negotiated the contract, indicating that the cotton described in the contract had been resold by the plaintiff, are mere self-serving declarations, and, as such, are inadmissible in support of the plaintiff's contention that an actual delivery of the cotton was contemplated.
5. A contract apparently legal on its face may be shown to have been founded upon an illegal consideration. Where two parties enter into a contract, under the terms of which one agrees to sell and deliver at a certain time and place, and the other agrees to take and pay for cotton of a described quantity and quality, parol evidence is admissible to

show that neither of the parties contemplated delivery of the cotton, but that the contract was intended as a mere speculation upon chances, to be settled upon the difference between the agreed price and the market value at the time and place fixed for delivery.

6. Applying to the facts of the present case the principle stated in the last preceding headnote, the court erred in directing a verdict in favor of the plaintiff.

DECIDED MARCH 6, 1912.

Action on contract; from city court of Ashburn—Judge Tipton. January 18, 1911.

*Haygood & Culls,* for plaintiff in error.

*J. T. Hill, J. H. Pate, J. W. Dennard,* contra.

POTTLE, J. The Georgia Cotton Company sued McNamara for the breach of a contract alleged to have been contained in three letters. The following is a copy of one of these letters:

"Fitzgerald, Ga., May 19, 1909. Mr. J. W. McNamara, Rebecca, Ga. Dear Sir: In consideration of one dollar in hand paid, and for value received, we beg to confirm having purchased of you to-day, as follows. one hundred bales (100) of cotton, basis good middling, Savannah classification, at ten and one-quarter cents (10 1/4) per pound f. o. b. Rebecca, Georgia. This cotton to be delivered to us in good merchantable condition, and reweighed, during the month of November, 1909, not later than the 25th day. This cotton to average in weight between four hundred and eighty (480) and five hundred and twenty (520) pounds per bale. Ruling differences between grades at the time of delivery to apply. Please confirm." Signed: Georgia Cotton Co., Thos. Nesbitt.

At the bottom of the letter appeared the following:

"Rebecca, Ga., May, 1909. Dear Sirs. I confirm the above contract, and will deliver the cotton as above agreed." Signed: J. W. McNamara.

At the trial the judge directed a verdict in favor of the plaintiff, for an amount representing the difference between the purchase price agreed on and the market value of the cotton at the time and place of delivery, as shown by the evidence. The defendant has sued out a direct writ of error, complaining of this ruling.

1. The contract sued on is in substantially the same form and language as that involved in *Terry* v. *International Cotton Co.,* 136 *Ga* 187 (70 S. E. 1100). The letter addressed to the defendant contained an offer to buy from him, upon the terms stated in the letter, cotton of the character therein described. The writ-

ten confirmation and acceptance by the defendant completed the contract, and it thereafter became binding on both· of the parties thereto. When the contract was offered in evidence the defendant objected to its introduction, upon the ground that it did not appear that Thomas Nesbitt, who purported to have signed the letter in behalf of the plaintiff, had written authority from the plaintiff to execute the contract. Substantially the same objection was made to the writing in the case of *Terry* v. *International Cotton Co.,* supra. The point in that case was raised by demurrer. The Supreme Court held that the petition was not demurrable either on the ground that the contract declared upon was unilateral, or that it was too vague, uncertain, or incomplete to satisfy the requirements of the statute of frauds, or that it constituted a mere option and did not show who were the parties to it. There was no merit in this objection. "There is no statute in this State requiring the authority to make the memorandum required by the statute of frauds to be in writing, and such authority may be conferred by parol." *Brandon* v. *Pritchett,* 126 *Ga.* 286 (1), (55 S. E. 241, 7 Ann. Cas. 1093). It appeared, from the testimony, that Nesbitt was manager for the Georgia Cotton Company at its branch office at Cordele, Georgia; that he had been representing the company for several years; that it was engaged in the business of buying and selling cotton; and that he had general authority to represent his principal in and about its business. This evidence was sufficient to have authorized the admission of the writings sued on.

2. It is contended that the evidence was not sufficient to authorize the verdict, because there was no proof of a demand for the delivery of the cotton prior to the date fixed in the contract for delivery, or prior to the bringing of the suit. The defendant answered, admitting that before the bringing of the suit the plaintiff had demanded payment of the amount of damages which· it claimed to have sustained by reason of the defendant's breach of the contract, but stated that whether any demand was made for the delivery of the cotton the defendant "is unable at this time either to admit or deny." This is probably an evasive answer, and should be taken as an admission of the allegation that demand was made. The defendant states no reason why he was unable to admit or deny that demand was made upon him for the delivery of

the cotton. He ought to have known whether demand was made or not, and he ought to have answered this allegation directly, or at least by assigning some reason why he was unable to admit or deny. See *Raleigh & Gaston R. Co.* v. *Pullman Co.,* 122 *Ga.* 700 (5), (50 S. E. 1008). But we do not think any demand was necessary in a case of this character. The obligation of the defendant was to deliver to the plaintiff a certain described quantity and quality of cotton by a certain date, at a certain place. His failure to comply with this obligation was a breach of his contract. The suit to recover damages alleged to have accrued on account of this breach was a sufficient demand under the law. It was not necessary that the plaintiff should have, prior to the bringing of the suit, sought out the defendant and in terms demanded that he comply with his contract.

3. It is further contended that the direction of the verdict was error because, while there was direct, uncontradicted evidence as to the market value of the cotton at the time and place of delivery, nevertheless the jury were not bound by the testimony of a witness as to market value. It is contended that this was opinion evidence, and that the jury would have had a right to disregard the opinion of this expert witness and substitute their own opinion as to the market value of the cotton. While testimony as to market value does involve the opinion of the witness as to what a particular commodity is worth, at the same time it is not such an opinion of a witness testifying as an expert as that the jury would have a right to absolutely disregard it, where it was uncontradicted. The witness in this case was engaged in the business of buying and selling cotton; he was familiar with the market price of cotton at the place of delivery fixed in the contract; this familiarity was gained by him and this opinion was entertained by him by reason of the fact that he was engaged in the business of buying and selling cotton, and had personal knowledge as to the market value of the commodity at the time and place of delivery stipulated in the contract. In our opinion, this was testimony of a substantive fact, and, being wholly uncontradicted, the jury would have had no right to disregard it.

The plaintiff in error relies upon the case of *Baker* v. *Richmond City Mill Works,* 105 *Ga.* 225 (31 S. E. 426), to the effect that the jury were not bound by the testimony of an attorney as an

expert as to the value of the services of another attorney in a particular case. What has been said above sufficiently distinguishes this case. The case last referred to was cited with approval in *A., B. & A. Ry. Co.* v. *Howard,* 125 *Ga.* 478 (54 S. E. 530), which involved the question of the market value of certain cross-ties. The witness there testified that the market price of the cross-ties in Brunswick was *about* forty-four cents. In commenting upon this testimony, Mr. Justice Evans said that in the first place it was not to be regarded as positive and unequivocal proof that the article had the exact value stated by the witness, but that it was merely an expression of an opinion on the part of the witness. He then added: "But it is a mistake to suppose that the opinion of an expert witness on the subject is absolutely binding on the jury, and it is error to direct a verdict upon any such supposition." The learned Justice was evidently dealing with this witness as an expert, and not only as an expert, but as a witness who was unwilling to risk his opinion far enough to make an exact statement as to the market value of the commodity. That the Supreme Court did not intend its ruling to go to the extent claimed by the defendant in error is evidenced by the fact that in the case of *Watson* v. *Hazlehurst,* 127 *Ga.* 298 (56 S. E. 459), the court affirmed the direction of a verdict involving the market value of cotton on a particular date in the city of Savannah, solely upon the testimony of a witness that it was worth a certain price. The case last referred to was an action for damages for the breach of a contract similar to the one under investigation in the present case. The case differs from *Martin* v. *Martin,* 135 *Ga.* 162 (68 S. E. 1095), and *Minchew* v. *Nahunta Lumber Co.,* 5 *Ga. App.* 154 (62 S. E. 716), where it was held that the jury were not bound by the opinion of a witness as to the value of specific property directly involved in the trial. In cases of this character there may be, and usually is, proven data from which the jury might form an independent estimate as to value. But where the issue is as to the market value of a commodity at a place other than that of the trial and at a time long anterior thereto, how can it be said that the jury can arbitrarily substitute their mere speculative opinion for the positive and uncontradicted testimony of a witness who professes to know what the market value was at the time and place in question. For instance, suppose that in a case tried in Georgia in 1912 the ques-

43

tion of the market value of wheat in Chicago in 1900 was in issue, and a witness familiar with the Chicago market at that time testified unequivocally to the value of the wheat, would a Georgia jury, without any data whatever, be permitted to disregard this testimony and substitute its own opinion? We think not, nor do we think the authorities require a contrary ruling. See *Atlantic Coast Line R. Co.* v. *Harris,* 1 *Ga. App.* 668 (57 S. E. 1030).

4. The court admitted in evidence, over objection of the defendant, certain letters written by an officer of the plaintiff to another officer in Cordele. These letters contained memoranda which indicated that the cotton bought from the defendant had been resold by the plaintiff. Evidence of this character would be material on the question as to whether actual delivery of the cotton was contemplated by the parties, and would be a circumstance tending to show that the plaintiff did expect delivery of the cotton, but the evidence offered to prove this fact was not admissible for this purpose. The letters were merely self-serving declarations on the part of the plaintiff, and were, consequently, inadmissible to prove the fact sought to be established.

5, 6. But we do think the court erred in directing a verdict in favor of the plaintiff. The defendant pleaded that the contract sued on was intended by both parties to be simply a speculation in futures; that actual delivery of the cotton was not contemplated, and that the parties expected to settle with each other upon the difference between the purchase-price and the market value at the time and place of delivery. In the recent case of *Luke* v. *Livingston,* 9 *Ga. App* 116 (70 S. E. 596), it was held: "Parol evidence is competent to show that a written contract apparently relating to an actual sale of cotton was in fact entered into merely for the purpose of allowing the parties to deal in cotton futures." The defendant testified as follows: "Prior to the making of these contracts, early in the season, we agreed to do some future business. The way we agreed, he was to do one side and me the other; one to buy and one to sell. The writings were to be fixed up some later day. When we made such future contracts they were to be discharged by the difference, to be paid in money. What was said was that if he lost he was to pay, and if I lost I was to pay. These three letters put in evidence, dated May 19, June 30, and July 7, 1909, under which I wrote the confirmation, were in pursuance of that conversation,

and followed it up." It is very clear to our minds that if the jury should credit this testimony, they would be obliged to find that both the defendant and Nesbitt, the manager of the plaintiff company, understood and agreed that no actual cotton was to be delivered, and that the contract was made in pursuance of a mere speculative venture, obnoxious to the law. We therefore send the case back, that it may be submitted to the jury upon the issue as to whether or not actual delivery of the cotton was contemplated; in other words, whether the writings spoke the truth, or whether, notwithstanding the actual agreement to deliver expressed in the face of the writings, it was nevertheless understood and agreed by both parties, at the time the contract was entered into, that actual delivery of the cotton would not be required, but that the parties would settle simply upon the difference existing at the time of delivery between the market value of the cotton and the purchase-price as fixed in the contract. See *Farmers Oil Co.* v. *Rosenthal*, ante, 416 (73 S. E. 428).           *Judgment reversed.*